UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ENHANCEDCARE, INC. d/b/a
ENHANCEDCAREMD,

                              Plaintiff,

                                                      Case # 20-CV-6171-FPG

v.

                                                      DECISION AND ORDER

ATTENTIVE HEALTH & WELLNESS, LLC, et al.,

                              Defendants.

## INTRODUCTION

Plaintiff EnhancedCare, Inc. ("Enhanced") asserts claims against Defendants Attentive Health & Wellness, LLC ("Attentive") and David Chaviers (together, "Defendants") for breach of contract. ECF No. 1-1. Now before the court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c) or, in the alternative, for either transfer of the action to the U.S. District Court for the Northern District of Alabama, Middle Division, pursuant to 28 U.S.C. § 1404 or for a stay. ECF Nos. 16, 16-1, 16-8. Defendants' motion for transfer is GRANTED.

## BACKGROUND

### I.      The Parties

Enhanced created and provides an interactive health risk assessment and health and wellness management program. ECF No. 1-1 ¶ 7. Attentive is a provider of employer-sponsored workplace wellness programs. *Id.* ¶ 8. Enhanced alleges that Chaviers is an individual who formerly did business as Attentive Health & Wellness, LLC prior to its formation as a separate entity. *Id.* ¶¶ 3, 5.

1

## II.     This Action

On November 26, 2019, Enhanced filed this action in New York State Supreme Court. ECF No. 1-1. Enhanced alleges that Defendants violated a Software as a Service Partner Agreement ("Partner Agreement"). *Id.* ¶¶ 4, 5, 9–11; ECF No. 19-3 at 6–25.[1] Enhanced claims that Chaviers signed the agreement on behalf of Attentive Health & Wellness, LLC prior to the formation of the entity. ECF No. 1-1 ¶ 5. Defendants allegedly transferred clients away from Enhanced to an alternate service provider and directed clients to disregard communications and billing from Enhanced. *Id.* ¶¶ 11–12. Enhanced seeks damages in excess of $200,000 and injunctive relief. *Id.* ¶¶ 19, 21.

The Partner Agreement was signed on August 1, 2018. ECF No. 19-3 at 19. It provides that "[a]ll actions brought to interpret or enforce th[e] [Partner] Agreement shall be brought in the exclusive forum of the courts located in Rochester, NY and all parties agree not to assert any defenses based on lack of personal jurisdiction, forum, non conveniens [sic] or inappropriate venue." *Id.* at 17; ECF No. 1-1 ¶ 6.

Defendants removed the action to this Court on March 19, 2020, ECF No. 1, and then answered the complaint on March 26, 2020, ECF No. 6. In their answer, Defendants asserted several affirmative defenses, including that Enhanced's claims needed to be brought in the matter "pending between the parties . . . in the Northern District of Alabama, Middle Division," Civil Action Number 4:19-CV-01066 (the "Alabama Action"), and that the first-filed rule required the matter to be transferred to the Northern District of Alabama. *Id.* ¶¶ 29, 30. The matter was then referred to Magistrate Judge Payson, who held a scheduling conference and issued a scheduling order. ECF Nos. 8, 11, 12. On July 10, 2020, the parties filed their Rule 26(a)(1) disclosures

---

[1] For clarity, all page citations to documents available through the Court's electronic filing system will be to the page number assigned by that system.

pursuant to the scheduling order, ECF Nos. 11, 14, 15; ECF No. 19-1 ¶ 18, and Defendants filed the instant motion, ECF No. 16. Since that time, the parties have selected a mediator pursuant to the Court's Alternative Dispute Resolution program and unsuccessfully attempted to mediate the matter. ECF Nos. 20, 22; ECF No. 19-1 ¶¶ 17, 22. Enhanced has served Attentive and Chaviers with document requests and notices to take depositions, ECF No. 19-1 at 5–6, 107–15, but the Defendants have declined to answer the discovery requests *Id.* at 5–6, 130–38. The parties agreed to an extension of the discovery deadlines set by Judge Payson, and Judge Payson issued an amended scheduling order on December 18, 2020. ECF No. 23.

### III.    Alabama Action

On July 9, 2019, Attentive and a third party, C & H Management Group, LLC (together, the "Alabama Plaintiffs"), filed suit against two third parties (Jerome DeLuccio and David Coffey) and "enhancedcareMD" (collectively, the "Alabama Defendants"). ECF No. 16-2 at 2. The Alabama Plaintiffs alleged that DeLuccio and Coffey were doing business as, and had a partnership interest in, "enhancedcareMD" *Id.* at 3, 5.

The Alabama Plaintiffs claimed that the Alabama Defendants were violating an Agent/Broker Sales Agreement ("Sales Agreement") and a Confidentiality, Non-Competition and Non-Disclosure Agreement ("Non-Competition Agreement") with Attentive and sought an injunction, declaratory judgment, and monetary damages. *Id.* at 2–5. The Alabama Defendants allegedly violated the agreements by withholding funds due under the Sales Agreement, by competing with Attentive and soliciting Attentive's customers, and by disclosing Attentive's confidential information. *Id.* at 13. The Alabama Plaintiffs also asserted claims for tortious interference with business or contractual relations, for fraud, conspiracy, and collusion, for conversion, and for violation of the Alabama Trade Secrets Act. *Id.* at 13–17.

The Alabama Plaintiffs claimed that the Alabama Defendants submitted to the personal jurisdiction of the courts in Etowah County, Alabama, as well as the United States District Court for the Northern District of Alabama, Middle Division. *Id.* at 3. The Sales Agreement appears to be between C & H Management Group, LLC d/b/a Attentive Health & Wellness and DeLuccio,[2] identified only as "CEO," and provides:

> [DeLuccio] hereby irrevocably submits itself to the personal jurisdiction of the courts in and for Etowah County, Alabama or in the United States District Court, Northern District of Alabama, Middle Division, and [DeLuccio] hereby waives, to the full extent permitted by law, any objection that it may now or hereafter have to the laying of venue of any such action in such court and any claim that any such action, suit or proceeding . . . has been brought in an inconvenient forum.

*Id.* at 21, 23, 26.

The Non-Competition Agreement appears to be between C & H Management Group, LLC d/b/a Attentive Health & Wellness and DeLuccio[3] and provides:

> The parties agree that any claim of any type brought by one against the other must be maintained only in a court sitting in Etowah County, Alabama or, if a federal court, the Northern District of Alabama. For purposes of enforcement of this Agreement, the parties consent to personal jurisdiction in the State of Alabama.

*Id.* at 30, 38, 39–40.

On August 5, 2019, the Alabama Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6), seeking dismissal of certain claims. ECF No. 16-4. In relevant part, the Alabama

---

[2] In a motion to dismiss, the Alabama Defendants claim that the contract identifies enhancedcareMD as a party, but the Court is unable to locate any provision specifically identifying enhancedcareMD as a party. ECF No. 16-2 at 21–28; ECF No. 16-4 at 4. The agreement, however, does specify that it permits DeLuccio to provide C & H's "clients with a unique wellness program that includes enhancedcareMDs suite of services" and the attached "Schedule 'A'" references enhancedcareMD. ECF No. 16-2 at 21, 27.

[3] The Non-Competition Agreement does not reference enhancedcareMD. ECF No. 16-2 at 30–40. The agreement also appears to mistakenly refer to DeLuccio as the "Disclosing Party," which earlier in the agreement is defined as C & H. *Id.* at 30, 40. The other party to the agreement, the "Receiving Party," is only identified by an illegible signature that the Court assumes identifies DeLuccio. *Id.* at 39. But in their motion to dismiss, the Alabama Defendants claim DeLuccio signed on behalf of "EnhancedcareMD." ECF No. 16-4 at 4–5. That assertion is not evident from the face of the agreement.

Defendants argued that Attentive was not a real party in interest to the agreements at issue (but rather the real party in interest was C & H), and that C & H failed to sue "the true party to the contracts," "enhancedcare, Inc." *Id.* at 4–5, 12–13. The Alabama Defendants claim that the Partner Agreement is the operative document governing the parties' relationship. *Id.* at 4–5.

In response to the motion to dismiss, the Alabama Plaintiffs argued that they had sued the proper parties and that "enhancedcare, Inc." was not a party to the contracts at issue but rather the contracting party was either DeLuccio or "enhancedcareMD," which was a partnership between DeLuccio and Coffey. ECF No. 16-4 at 53–55. The Alabama Plaintiffs further argued that Attentive was a proper party because C & H transferred its rights under the agreements at issue to Attentive. *Id.* at 52–53.

After briefing was completed on the motion to dismiss, the parties submitted a joint motion to the court on March 31, 2020 noting that they had agreed to permit the Alabama Plaintiffs to file an amended complaint, which was filed on April 21, 2020. ECF No. 16-3; Joint Motion to Continue Hearing (Dkt. 19), *C & H Mgmt. Grp., LLC v. DeLuccio*, No. 19-CV-1066, (N.D. Ala. Mar. 31, 2020). The amended complaint named the Alabama Defendants and Enhanced as defendants and asserted that Enhanced and Attentive entered into the Sales and Non-Competition Agreements. ECF No. 16-3 at 2, 6. Generally, the Alabama Plaintiffs alleged that Enhanced violated those agreements by misappropriating Attentive's intellectual property, soliciting Attentive's existing and potential clients using that misappropriated intellectual property, and withholding a share of profits due under the Sales Agreement. *Id.* at 7–9. The amended complaint further asserted several allegations relating to the Partner Agreement and included the agreement as an attachment. *Id.* at 7, 51–70.

On May 18, 2020, the Alabama Defendants and Enhanced answered the amended complaint and Enhanced filed a counterclaim against the Alabama Plaintiffs. ECF No. 16-5. Enhanced alleged violations of the Sales Agreement and its Addendum. *Id.* at 21. The Addendum "is made by and among enhancedcare, Inc. and their affiliates (enhancedcareMD), and Attentive." ECF No. 16-3 at 47. The Addendum specifically discusses Enhanced's "leading edge software as a service (SAAS) platform" and provides that the platform "will be used on a case-by-case basis." *Id.* The Addendum was signed on August 1, 2018. *Id.* at 49.

The Alabama Plaintiffs answered Enhanced's counterclaim on June 8, 2020. Answer to Countercl., (Dkt. 27), *C & H Mgmt. Grp.*, No. 19-CV-1066. Since that time, the parties held a Rule 26(f) planning meeting and sought and obtained a protective order; the court has entered a scheduling order; the Alabama Defendants and Enhanced have moved for partial judgment on the pleadings and Enhanced has moved for partial summary judgment; the parties have briefed those motions; and the parties appear to have conducted some discovery. *Id.* at Dkts. 29–49.

## LEGAL STANDARD

In the Second Circuit, it is a "well-settled principle . . . that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (internal quotation marks and alterations omitted). The first-filed rule "is a rule of judicial economy that creates a strong presumption in favor of the forum of the first-filed suit." *Williams Advanced Materials, Inc. v. Target Tech. Co.*, No. 03-CV-276, 2007 WL 2245886, at *4 (W.D.N.Y. Aug. 1, 2007) (internal quotation marks omitted). The rule "applies when there is substantial overlap between the two competing cases in that they have 'identical or substantially similar parties and claims.'" *Id.* (quoting *Cuyahoga Equip. Corp. v. United States*, 980 F.2d 110,

116–17 (2d Cir. 1992)). "To determine whether the balance of convenience warrants a departure from the first-filed rule, the court applies the same factors as in deciding whether transfer is appropriate under 28 U.S.C. § 1404(a)." *Id.* at *5.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *Cuyahoga Equip. Corp.*, 980 F.2d at 117. Resolving a motion to transfer "requires a two-part inquiry: first, 'whether the action to be transferred "might have been brought" in the transferee court'; and second, whether 'considering the "convenience of parties and witnesses," and the "interest of justice," a transfer is appropriate.'" *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 374 (W.D.N.Y. Aug. 31, 2018) (quoting *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)).

Whether the interests of justice and the convenience of parties and witnesses favor transfer is guided by several factors, including (1) plaintiff's choice of forum, (2) convenience of the witnesses, (3) location of evidence, (4) convenience of the parties, (5) locus of the operative facts, (6) ability to compel the attendance of witnesses, (7) relative means of the parties, and (8) trial efficiency and the interests of justice. *See N.Y. Marine*, 599 F.3d at 112–13. "[A] plaintiff's choice of forum is generally entitled to substantial consideration," *Jarolim v. Akris Inc.*, No. 14-CV-3361, 2015 WL 5821094, at *6 (S.D.N.Y. Sept. 9, 2015), and "[t]he moving party carries the 'burden of making out a strong case for transfer.'" *Travelers*, 324 F. Supp. 3d at 374 (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).

## DISCUSSION

### I.    Application of the First-Filed Rule

Defendants premise their argument for transfer on the first-filed rule. ECF No. 16-8. The first question the Court must answer is whether that rule is even applicable in this context. The parties do not dispute that the Alabama Action was filed first, but Enhanced argues that it was not named as a party in the Alabama Action when it was first filed and that its claims here are narrower than the matters at issue in the Alabama Action. ECF No. 19 at 10–17. The Court finds that the first-filed rule applies.

Although the differences between this action and the Alabama Action make application of the rule more complicated, the distinctions are not fatal. "The rule does not . . . require that cases be identical," but instead "[t]he crucial inquiry is one of 'substantial overlap'" and "[c]omplete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997); *see Cuyahoga Equip. Corp.*, 980 F.2d at 116–17 ("This rule usually applies when identical or substantially similar parties and claims are present in both courts.").

There is substantial overlap between the two actions here. Both actions involve different individuals and one different entity, but these distinctions are based on the parties' ongoing dispute regarding the proper parties that are bound to the various agreements entered throughout the course of these parties' relationship. This confusion derives from the agreements undergirding the parties' relationship, which are less than clear as to the parties that are thereby bound.[4] The Court need not resolve this morass to rule on Defendants' pending motion. The various agreements demonstrate

---

[4] As explained in further detail above, the initial agreements identify the parties as C & H "d/b/a Attentive Health & Wellness" and either "enhancedcareMD" or just DeLuccio, but the Addendum to the Sales Agreement specifically identifies Attentive and Enhanced and the Partner Agreement identifies Attentive and "enhancedcareMD." ECF No. 16-2 at 21, 26, 30, 39–40; ECF No. 16-3 at 47; ECF No. 19-3 at 6, 19.

that, regardless of what parties are bound, all relevant agreements arose out of the same ongoing transaction between the parties and that the parties are substantially related.

Further, even though Enhanced was not initially named in the Alabama Action—and indeed was not named until after this action was filed—Attentive and Enhanced's CEO were both named in the Alabama Action. That alone appears sufficient to demonstrate substantial similarity. *Spotless Enters. Inc. v. Accessory Corp.*, 415 F. Supp. 2d 203, 206 (E.D.N.Y. 2006) (holding that there was "sufficient similarity" where an action "was originally commenced without naming . . . a party," but the party's "grandparent" company was named). Further, Enhanced's identification in the amended complaint removes all doubt that the parties in the two lawsuits are substantially related, and it is of no consequence that it was not named when the action was initially filed. *Id.* (finding that amended complaint naming party related back to "the original commencement date" for purposes of first-filed analysis); *see also Target Tech.*, 2007 WL 2245886, at *4 ("The first-to-file rule relates to where the actual dispute was first filed, not where a particular party was first brought into the litigation." (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 182–83 (1952) (affirming a stay of a second-filed action even though the plaintiff in the second suit was not joined as a defendant in first-filed action until after second suit was initiated))); *accord Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994) ("In determining when a party filed an action for purposes of the first to file rule, courts focus on the date upon which the party filed its original, rather than its amended complaint.").

Beyond the distinct parties, Enhanced is correct that this action is narrower than the Alabama Action in that this action involves alleged violations of only the Partner Agreement while the Alabama Action involves the alleged violation of the Sales and Non-Competition Agreements and certain other claims made by the Alabama Plaintiffs. The fact that one action involves

9

additional claims does not block application of the first-filed rule. *Adam v. Jacobs*, 950 F.2d 89, 92–93 (2d Cir. 1991) (applying the first-filed rule even where one action involved claims related to guarantees and the other involved claims related to a merger agreement); *Pippins v. KPMG LLP*, No. 11-CV-377, 2011 WL 1143010, at *4 (S.D.N.Y. Mar. 21, 2011) ("The existence of an additional claim in the [current action] does not undermine the appropriateness of applying the first-to-file rule." (internal quotation marks omitted)); *see also Lloyd v. J.P. Morgan Chase & Co.*, No. 11-CV-9305, 2012 WL 3339045, at *1 (S.D.N.Y. Aug. 14, 2012) ("While competing claims need not present exactly the same issues to trigger the first-filed rule, the cases must be related."). Here, Enhanced's claims in the Alabama Action and in this action are substantially similar, if not identical.

Although Enhanced's claim here relates to the Partner Agreement, and its counterclaim in the Alabama Action relates to the Sales Agreement, both claims relate to the same underlying conduct—transferring existing clients to an alternate service provider and directing them to disregard future communications and billing from Enhanced. Both claims also involve the same time periods (December/fall of 2018 and June 2019) and seek the same damages ("upwards of $200,000"). ECF No. 1-1 ¶¶ 11, 12, 19; ECF No. 16-5 ¶¶ 25, 26.

This substantial similarity in Enhanced's claims is unsurprising given that the Partner Agreement and the Sales Agreement are interrelated. The Sales Agreement was modified by an Addendum, which was signed by the parties on the same day as the Partner Agreement. ECF No. 16-3 at 47, 49; ECF No. 19-3 at 19. The Addendum specifies how the Sales Agreement applies to the Software as a Service platform described in the Partner Agreement and specifies how Enhanced will be compensated for Attentive's use of that platform. ECF No. 16-3 at 47–48. The Partner Agreement also appears to reference the Sales Agreement in referring to "the Master Agreement

between the two companies," which is undefined. ECF No. 19-3 at 7. The Court cannot discern how Enhanced's claim related to the Sales Agreement and its claim related to the Partner Agreement could be resolved independently. If Enhanced is successful in proving a violation of the Partner Agreement, damages will necessarily be computed by referring to the Sales Agreement, and both this Court and the Northern District of Alabama will need to resolve the same issues.

In short, both actions involve the alleged deterioration of the relationship between Enhanced and related individuals and Attentive and related individuals and entities. The parties' dispute accordingly arises out of the same underlying set of transactions, and application of the first-filed rule is appropriate. *See Adam*, 950 F.2d at 93 (applying the first-filed rule where "the second suit clearly relates to the same transaction as the first"). This result is consistent with "[t]he general rule among federal district courts . . . to avoid duplicative litigation." *Marotto v. Kellogg Co.*, No. 18-CV-3545, 2018 WL 10667923, at *2 (S.D.N.Y. Nov. 29, 2018).[5]

## II.   Exceptions to the First-Filed Rule

Given that the Court has determined that the first-filed rule applies, there is "a 'strong presumption' in favor of the first-filed suit." *Power Play 1 LLC v. Norfolk Tide Baseball Club,*

---

[5] Because the first-filed rule applies, Defendants argue that the analysis should end here and this Court should stay this action and defer to the Northern District of Alabama's application of the rule. ECF No. 16-8 at 10–11 (citing *Constellation Leasing, LLC v. Oxford Aviation, Inc.*, No. 08-CV-6558, 2010 WL 1323566, at *3 n.2 (W.D.N.Y. Mar. 29, 2010); *MSK Ins., Ltd. v. Emps. Reinsurance Corp.*, 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002)). The Southern District of New York generally applies a "bright-line rule" to that effect. *MSK Ins.*, 212 F. Supp. 2d at 267; *accord Strukmyer, LLC v. Infinite Fin. Sols., Inc.*, No. 13-CV-3798, 2013 WL 6388563, *7–8 (N.D. Tx. Dec. 5, 2013) (transferring second-filed action to court in which first action was filed and noting that "the issue of whether the forum-selection clause binds the parties does not need to be addressed by the court in the second-filed action"). Plaintiffs do not respond to this argument. ECF No. 19. Although a reasonable method of conserving judicial resources and avoiding contradictory rulings where the issue of the appropriate forum is before both courts, the concerns underlying deferral "of judicial economy and comity are not implicated" where, as here, a correspondent motion is not pending in the other jurisdiction. *Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC*, No. 17-CV-4831, 2018 WL 357304, at *3 (S.D.N.Y. Jan. 9, 2018) (declining to defer where court in which action was first filed was holding the corresponding motion in abeyance pending the Southern District of New York's disposition of the motion). Applying the first-filed rule is particularly apt here given that the Court determines transfer is appropriate. *Cf. N.Y. Packaging II, LLC v. Saneck Int'l*, No. 16-CV-3383, 2017 WL

*LLC*, No. 17-CV-4831, 2018 WL 357304, at *2 (S.D.N.Y. Jan. 9, 2018). "[T]he Second Circuit has recognized that the first-filed presumption is inapplicable in only two scenarios: (1) if the balance of convenience weighs in favor of the second action, or (2) if special circumstances justify giving priority to the second action." *Id.* (citing *N.Y. Marine*, 599 F.3d at 112).

Although it does not fit cleanly into either scenario, Enhanced's most compelling argument that the Court should depart from the rule's "strong presumption" is that the Partner Agreement's forum selection clause trumps the first-filed rule.[6] ECF No. 19 at 7–18. The parties do not dispute that the Partner Agreement's forum selection clause provides that any action to interpret or enforce it must be brought in Rochester, New York and do not dispute that it is presumptively enforceable. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (detailing "four-part analysis" used to examine the enforceability of a forum selection clause). The Supreme Court has admonished that "valid forum-selection clauses" are generally "given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013) (internal quotation marks omitted).

The Court must accordingly determine how to weigh the ostensibly applicable forum selection clause with the conflicting first-filed rule. The parties have failed to marshal authority adequately addressing this conflict. But courts in this Circuit, both before and after *Atlantic Marine*, have analyzed forum selection clauses in the traditional first-filed framework and applied

---

519232, at *3 (E.D.N.Y. Feb. 8, 2017) (noting that a court should defer application of the rule because, "if a court with a later-filed case concludes that some exception to the first-filed rule applies, it has no way to divest the first-filed forum of jurisdiction in order to consolidate the two actions").

[6] As it does with the first-filed analysis, the confusion regarding what parties are bound to what agreements bleeds into the analysis of the various agreements' forum selection clauses. Given the absence of briefing on this issue, the Court assumes for purposes of this motion that the relevant parties are either directly bound by the forum selection clauses or are sufficiently related to the bound parties to be so bound. *See LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 154–55 (E.D.N.Y. 2012) (discussing application of forum selection clause to non-signatories).

the first-filed rule even where it conflicted with a forum selection clause. *Impala Warehousing (US) LLC v. Kostmayer Constr., LLC*, No. 12-CV-6799, 2012 WL 6621729, at *2 (S.D.N.Y. Dec. 19, 2012) ("The only aspect that weighs in Plaintiff's favor is the choice of law and the forum selection clause, but this alone is not enough to carry the day, in light of other factors that favor Louisiana."); *Berkley Assurance Co. v. MacDonald-Miller Facility Sols., Inc.*, No. 19-CV-7627, 2019 WL 6841419, at *4–6 (S.D.N.Y. Dec. 16, 2019) (examining forum selection clause within the first-filed framework as part of its analysis of the convenience factors); *see also XL Ins. Am., Inc. v. DiamondRock Hosp. Co.*, 414 F. Supp. 3d 605, 608–09 (S.D.N.Y. 2019) (holding that the "extraordinary circumstances" discussed in *Atlantic Marine* could be met in the context of abstention, specifically noting "that the presence of forum selection and choice of law clauses do not prevent comity abstention 'where it is otherwise warranted'" (quoting *Allstate Life Ins. Co. v. Linter Grp., Ltd.*, 994 F.2d 996, 1000 (2d Cir. 1993)).

Enhanced cites to a Summary Order of the Second Circuit that found a district court properly rejected application of first-filed rule where a forum selection clause applied. *Nat'l Union Fire Ins. Co. v. Las Vegas Pro. Football Ltd. P'ship*, 409 F. App'x 401, 403 (2d Cir. 2010) (summary order). But the Second Circuit's decision in *National Union* supports the proposition that forum selection clauses should be analyzed within the framework of the first-filed rule.[7] The Second Circuit found that "[f]orum shopping is [a] special circumstance[]" that permits departure

---

[7] Enhanced also cites the Second Circuit's decision in *New York Marine*, but in that case, the Second Circuit again examined the forum selection clause within the framework of the first-filed rule and affirmed the lower court's analysis of the convenience factors for multiple reasons, including the parties' forum selection clause. 599 F.3d at 113 (finding "the locus of operative facts as well as the interests of efficiency and fairness favor a New York forum" where the relevant insurance policy "was negotiated and executed in New York, issued by a New York insurer, stipulated to apply New York law, and agreed upon to be litigated in the United States District Court for the Southern District of New York"). Importantly, the court concluded that the issues in each of the actions, unlike the issues here, were not coextensive and separate resolution of those issues would not result in duplicative litigation. *Id.*

from the first-filed rule and that a party ignoring a mandatory forum selection clause was forum shopping. *Id.*

Here, however, it cannot be said that the Alabama Plaintiffs were forum shopping in initiating the Alabama Action. In fact, the Alabama Plaintiffs brought suit based on alleged violations of the Sales and Non-Competition Agreements. The Non-Competition Agreement requires, and the Sales Agreement permits, suit in Alabama. Accordingly, the Court cannot say that the Alabama Plaintiffs were forum shopping when they acted consistently with those agreements.

Whatever the analytical framework, at minimum, a valid-forum selection clause may be usurped by the first-filed rule where there are conflicting forum selection clauses. *See Samuels v. Medytox Sols., Inc.*, No. 13-CV-7212, 2014 WL 4441943, at *4, *7–8, *10 (D.N.J. Sept. 8, 2014) (noting that, "when faced with two or more conflicting forum selection clauses, federal courts are loath to enforce all of them out of concern for wasting judicial and party resources" (internal quotation marks omitted)). In the absence of the first-filed rule, "[w]here, as here, the two sides have put forth different contracts, each containing a forum selection clause designating a different forum, and the parties do not dispute the facts which gave rise to those two conflicting contracts, the court must decide . . . which forum selection clause governs." *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006). In *Asoma*, the Second Circuit examined how the various forum selection clauses at issue applied to each set of claims and parties. *Id.* at 824–28.

Here, the Non-Competition Agreement contains a broad, mandatory forum selection clause designating an Alabama forum. ECF No. 16-2 at 38. But the Non-Competition Agreement only appears relevant to claims made by the Alabama Plaintiffs against the Alabama Defendants and Enhanced. Aside from commonality of certain parties, the claims do not appear to relate to

Enhanced's claims brought in this action. Nevertheless, the Non-Competition Agreement's "Choice of Forum" provision is so broad that it arguably covers this dispute. ECF No. 16-2 at 38 ("The parties agree that *any claim of any type* brought by one against the other must be maintained only in a court sitting in Etowah County, Alabama or, if a federal court, the Northern District of Alabama." (emphasis added)); *cf. Gen. Elec. Co. v. Lighting Sci. Grp. Corp.*, No. 19-CV-5365, 2019 WL 3451128, at *2–3 (S.D.N.Y. July 31, 2019) (finding that forum selection clause only applied to disputes that relate to an agreement "and not to any and all unrelated disputes that may arise between the parties," but the "parties included the forum selection clause as the second sentence within a Governing Law provision that beg[an] with the words 'this Agreement'" (brackets omitted)).

Even assuming the Non-Competition Agreement's broad, mandatory forum selection clause is inapplicable, the Sales Agreement also contains a forum selection clause permitting an Alabama forum. ECF No. 16-2 at 23. That forum selection clause, however, is arguably permissive rather than mandatory. "For a forum selection clause to be deemed mandatory, jurisdiction and venue must be specified with mandatory or exclusive language." *Macsteel Int'l USA Corp. v. M/V Larch Arrow*, 354 F. App'x 537, 539 (2d Cir. 2009) (summary order) (internal quotation marks omitted). In contrast, a permissive forum selection clause, or "a service of suit clause," "generally provides no more than a consent to jurisdiction. It does not bind the parties to litigate in a particular forum." *Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 370 (S.D.N.Y. 2009) (internal quotation marks omitted) (applying New York law).[8] Typically, a permissive forum selection clause would be insufficient to justify a

---

[8] Enhanced cites the Southern District of New York's decision in *Dornoch*, for the proposition that a mandatory forum selection clause "is dispositive," even where the first-filed rule applies. 666 F. Supp. 2d at 370. The court, however, did not address conflicting forum selection clauses and the claims at issue were distinct, eliminating the concern of duplicative litigation. *Id.* at 370–71.

transfer. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016) ("Only mandatory clauses justify transfer or dismissal.").

"[I]t is well recognized," however, that a forum selection clause couched in permissive language "may nonetheless be mandatory where it 'combines permissive forum selection language with an express waiver of venue objections.'" *Akers Biosciences, Inc. v. Martin*, No. 14-CV-8241, 2015 WL 1054971, at \*4 (S.D.N.Y. Mar. 10, 2015) (quoting *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, No. 11-CV-2589, 2011 WL 4005345, at \*2 (S.D.N.Y. Aug. 29, 2011)). In other words, where a matter is filed in a particular forum and the parties have agreed to a permissive forum selection clause with an express waiver of objections to that forum, the clause serves as a mandatory anchor to that forum. *See Aguas Lenders Recovery Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009) (holding that a permissive forum selection clause containing a waiver of any claims of *forum non conveniens* "amounts to a mandatory forum selection clause at least where the plaintiff cho[se] the designated forum").

The Sales Agreement's forum selection clause includes permissive language and an express waiver of any venue objections.[9] Although, by its terms, it does not justify transferring this matter to the Northern District of Alabama, it does serve to anchor the claims relating to the Sales Agreement to the Northern District of Alabama. Accordingly, this Court cannot transfer this matter to the Northern District of Alabama without violating the Partner Agreement's forum selection clause and the Northern District of Alabama could not transfer claims relating to the Sales Agreement to this Court without violating that agreement's forum selection clause. Given that both courts will be required to interpret both agreements, at minimum, to resolve Enhanced's

---

[9] The Sales Agreement provides that the parties waive "any objection that [they] may now or hereafter have to the laying of venue of any such action in such court and any claim that any such action, suit or proceeding . . . has been brought in an inconvenient forum." ECF No. 16-2 at 23.

claims, the first-filed rule is perfectly suited to break the standoff. *See Jones v. Custom Truck & Equip., LLC*, No. 10-CV-611, 2011 WL 250997, at *5–6 (E.D. Va. Jan. 25, 2011) (declining to enforce two "forum selection clauses" appearing in different agreements that were "constituent parts of a single transaction" where doing so would divide the action and "be wasteful and inefficient").

Enhanced's remaining arguments do not justify departure from the first-filed rule. First, Enhanced claims that special circumstances warrant such a departure. Application of the "special circumstances" exception is "quite rare." *Emps. Ins. v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).

Enhanced claims that this action is more procedurally advanced than the Alabama action. ECF No. 19 at 15–16. Although that may have been true at the time Defendants filed their motion, the Court cannot say that is still the case. The Alabama Action appears to have progressed to the point that it is on similar, if not more advanced, procedural footing as this action. The most that can be said is that the parties here participated in the Court's Alternative Dispute Resolution program and mediated the matter. Although the Court doubts that mediation makes this matter more procedurally advanced, in any event, the Court declines to weigh their participation in mediation against Defendants.

Enhanced further claims Defendants engaged in gamesmanship by waiting to amend their complaint in the Alabama Action to include Enhanced until after its time to file for remand had expired. ECF No. 19 at 5–6, 8–15. Although Enhanced's argument is rather opaque, it seems to claim that it would have sought remand to avoid the application of the first-filed rule, *see Port Auth. v. Kraft Power Corp.*, No. 11-CV-5624, 2012 WL 832562, at *1 (S.D.N.Y. Mar. 13, 2012) (noting that "[t]he first-to-file doctrine applies where there is concurrent federal litigation, not

where a federal court contends with concurrent state litigation" (emphasis removed)), if it had been named in the Alabama Action prior to the expiration of its opportunity to seek remand. To the extent such "gamesmanship" could constitute special circumstances, Enhanced's argument is undercut by Defendants' Answer, which was filed seven days after this action was removed (well within the thirty days Enhanced had to seek remand, 28 U.S.C. § 1447(c)) and asserted an affirmative defense claiming that the "first-to-file rule requires this Court to transfer this matter to the . . . Northern District of Alabama[] . . . to be consolidated with" the Alabama Action. ECF No. 6 ¶ 30. Enhanced accordingly was on notice that Defendants would be seeking application of the first-filed rule, and if it had valid grounds to seek remand to avoid application of that rule, it could have so acted. The Court declines to find "gamesmanship" on the part of Defendants where, to the extent they were playing a game, they were playing with their cards face up.[10]

Finally, Enhanced claims that the balance of convenience factors favor this action. ECF No. 19 at 5, 10, 17–19. The Court is to consider "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine*, 599 F.3d at 112 (internal quotation marks omitted).[11]

---

[10] Enhanced's argument is further undercut by its consistent insistence in the Alabama Action that it was the proper party in interest. It sought dismissal on those grounds. ECF No. 16-4 at 4–5. The logical result of Enhanced's motion to dismiss, if it were successful, would be for Enhanced to be named as a defendant in the Alabama Action. That is the result Enhanced obtained when the Alabama Plaintiffs filed an amended complaint—with the consent of the Alabama Defendants. Enhanced's quibbles regarding the timing of that result are not evidence of gamesmanship.

[11] The parties have submitted frustratingly little evidence regarding the convenience factors. In lieu of evidence, Defendants take the position that, because the first-filed rule applies, Enhanced has the burden of showing the balance of the convenience factors favors this Court's retention of the action. ECF No. 21 at 4–5. That approach is supported by binding Second Circuit precedent. *Emps. Ins.*, 522 F.3d at 275 (noting that the first-filed rule's "presumption" "may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action").

As it does in all cases where a party is seeking transfer based on the first-filed rule, the first factor favors retention. Most of the remaining factors, however, appear to be neutral. Enhanced is based in New York and Attentive is based in Alabama and there is no indication that the parties favored one state over the other in negotiating any of the relevant contracts or during their relationship. ECF No. 1-1 ¶¶ 1, 2. There is also no indication that either party does not have sufficient means to litigate in either New York or Alabama, which both parties are currently doing.

Enhanced claims that four of the clients it allegedly lost due to the Defendants' breach are based in New York, while only three are located in Alabama (with the remaining thirty-one scattered throughout the other states). ECF No. 19 at 19; ECF No. 19-3 ¶¶ 12–15. The Court declines to find this difference significant, and Enhanced has further failed to demonstrate whether representatives of any of these clients will be needed as witnesses or need to provide documents or other sources of proof. Based on the Court's understanding of Enhanced's claim, it appears that the relevant information will be primarily in the possession of the parties and the relevant witnesses will be associated with the parties.

Enhanced argues that this Court would have greater familiarity with New York law than the Northern District of Alabama, but to the extent this is true, the relevant issues of New York law are not particularly complex. This factor, at best, slightly favors retention of this action. *See Andreas-Moses v. Hartford Fire Ins. Co.*, No. 16-CV-1387, 2017 WL 5634709, at *4 (N.D.N.Y. Oct. 30, 2017) ("[W]hile the court must consider the transferee forum's familiarity with the substantive law, and whether requiring the Middle District of Florida to construe and apply New York law would be unduly burdensome, that consideration assumes less significance when an action does not involve complex questions." (collecting cases)), *report and recommendation adopted*, 2017 WL 5634613 (Nov. 22, 2017). Further, it seems likely this Court would need to

interpret the Sales Agreement, which is to be "construed in accordance with the laws of the State of Alabama." ECF No. 16-2 at 23. Accordingly, this consideration leans towards neutrality.

Enhanced further argues that transfer to the Northern District of Alabama would not further the object of judicial efficiency given that the Alabama Action involves additional claims that will take longer to resolve than Enhanced's claim here. ECF No. 19 at 16–17. The Court disagrees. If this Court retains this action, there is no guarantee this Court will be able to resolve Enhanced's claim prior to the Northern District of Alabama. Further, retaining the action would result in the separate resolution of Enhanced's claim here and counterclaim in the Alabama Action. Given the overlapping issues, a single court's resolution of both claims enhances judicial efficiency.

In short, although some of the efficiency factors favor retention of Enhanced's claim, the threat of duplicative litigation warrants application of the first-filed rule. *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1203 (2d Cir. 1970) (noting that "New York is a more logical forum than New Jersey," but the factors warranting that conclusion "must be weighed" against the fact the action was initiated "in New Jersey and the likelihood that failure to stay the New York action w[ould] result in litigation in two courts"); *Andreas-Moses*, 2017 WL 5634709, at *4 ("[A]lthough transfer might not be appropriate if it was to be decided strictly on the basis of the factors relevant to a section 1404(a) transfer request, . . . the interests of justice and the need for efficiency and judicial economy trump[] those considerations.").

Enhanced requests that, if the Court grants Defendants relief, that it transfer the action to the Northern District of Alabama. ECF No. 19 at 6, 19–20. Given that the claims at issue involve the same transaction and are closely tied together, the Court believes that such a transfer is in the interests of justice. *See Andreas-Moses*, 2017 WL 5634709, at *3 ("Under the first-filed rule, a district court is vested with broad discretion to dismiss, stay, or transfer a suit that is found to be

duplicative of a previously filed action." (collecting cases)).[12] The Northern District of Alabama will have the opportunity to consolidate this action with the Alabama Action if it finds such a consolidation warranted. Accordingly, Defendants' motion is GRANTED and this matter will be transferred to the Northern District of Alabama.

## CONCLUSION

Defendants' motion for transfer, ECF No. 16, is GRANTED. The Clerk of Court is directed to transfer this case to the United States District Court for the Northern District of Alabama, Middle Division, for further disposition, and to close this case.

IT IS SO ORDERED.

Dated: February 4, 2021
          Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[12] The parties do not dispute that this action might have been brought in the Northern District of Alabama. 28 U.S.C. § 1404(a).